IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK TRUNZO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:13-CV-00467 |
| | : | (JUDGE MARIANI) |
| SERGEANT MICHAEL MAYER and | : | |
| THE CITY OF SCRANTON, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.    Introduction

Presently before the Court is a Motion to Dismiss, filed by the Defendants, Sergeant

Michael Mayer and the City of Scranton, in this civil rights action.  For the reasons

discussed below, the Court will grant Defendants' Motion and dismiss each count of

Plaintiff's Complaint with leave to amend.

### II.    Factual Allegations and Procedural History

Plaintiff filed a Complaint against Sergeant Michael Mayer and the City of Scranton

on February 21, 2013. (See Compl., Doc. 1.) The Complaint contains sparse factual

allegations.  It stems, however, from a visit by the Plaintiff, Frank Trunzo, to the Robert

Morris School on May 21, 2012 to pick up his son at the conclusion of the school day. (Id.

at ¶ 12.) The reader is left to believe by negative implication that nothing out of the ordinary

happened during Trunzo's visit to the school. (See id. at ¶¶ 8-11, 13-14 (denying that the

factual allegations made in the Affidavit of Probable Cause subsequently filed against Trunzo actually occurred).)  However, the Complaint does not explain what actually *did* occur during his visit.

Instead, the Complaint next alleges that Defendant Michael Mayer, a sergeant with the Scranton Police Department, (*see id.* at ¶ 4), filed a Criminal Complaint and an Affidavit of Probable Cause against Frank Trunzo, (*id.* at ¶¶ 15-16).  Plaintiff alleges that "[s]ome of the language in that paperwork appears to be intentionally misleading and factually inaccurate," while "[o]ther parts of the paperwork are simply inadequate, regardless of Mayer's subjective intent, to establish probable cause to believe . . . that a crime had been committed."  (*Id.* at ¶ 18.)

Plaintiff did not submit a copy of the Criminal Complaint or the Affidavit of Probable Cause to his Complaint.  However, Defendants did submit them as an attachment to their Motion to Dismiss, (*see* Doc. 8-1), and, following an Order of this Court, (*see* Doc. 20), Plaintiff produced a sworn affidavit by Trunzo's criminal attorney stating that the documents so submitted as CM/ECF docket entry 8-1 are in fact true and correct copies of the Criminal Complaint and Affidavit of Probable Cause referenced in the civil Complaint, (*see* Aff. of Louis Cimini, Doc. 25, at ¶ 5).  This agreement as to the authenticity of the criminal documents allows the Court to consider their content at the motion to dismiss stage.  "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension*

*Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

"The rationale underlying this exception is that the primary problem raised by looking to

documents outside the complaint—lack of notice to the plaintiff—is dissipated 'where

plaintiff has actual notice and has relied upon these documents in framing the complaint.'"

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting

*Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993) (internal alterations omitted).

The Affidavit of Probable Cause states that on May 21 at 8:26 pm, Sergeant Michael

Mayer received a report of harassment from one Nancy Jennings. (*See* Aff. of Prob. Cause,

Doc. 8-1, at 4.) It continues:

> Ms. Jennings stated that she was dropping her child off at Robert Morris
> school at about noon, this date, and was approached by Mr. Pat Dougher, the
> school maintenance engineer. Mr. Dougher wanted Ms. Jennings to witness
> him approach Mr. Trunzo about his condition. Mr. Dougher believed Mr.
> Trunzo may have been intoxicated. Ms. Jennings stated Mr. Trunzo left after
> that interaction, in a newer black Cadillac suv/station wagon with tinted
> windows. At about 1430 hours Ms. Jennings returned to the school to pick
> her child up and she could see that Mr. Trunzo was staring at her the entire
> time. Ms. Jennings stated she felt uncomfortable but Mr. Trunzo left without
> confrontation, in the same black Cadillac. Ms. Jennings stated that a short
> time later she received a request for friendship, from Mr. Trunzo, on the social
> network Facebook. Ms. Jennings became nervous but ignored the request.
> Some time after that, approximately 1600 hours, Ms. Jennings received a
> private message from Mr. Trunzo, over Facebook. The message contains
> accusations against Ms. Jennings and Mr. Trunzo indicated that Ms. Jennings
> "f with the wrong person." In addition to that message there is yet another
> sent approximately one hour after the first. In the second, Mr. Trunzo
> continues with the derogatory remarks toward Ms. Jennings and states two
> different times that "you will be surrounded." Ms. Jennings is concerned for
> her safety because of Mr. Trunzo's actions. I responded to 1648 Dickson
> Avenue, the listed address for Mr. Trunzo, to attempt to get his side of the
> story. In front of the house was a black Cadillac suv/station wagon with tinted

3

windows. The registration, GLC9978, came back to that address registered to Mr. Trunzo. I knocked on the door and after several minutes the light went on inside, a male made a quick peak out the window and nobody answered the door. I knocked constantly for several minutes, had Comm Center call into the house and nothing got anyone to come to the door. I returned to police headquarters and contacted ADA Maryclare Hayes. I explained the situation to her and we agreed that Harassment (M3) was the appropriate charge. I gave Mr. Trunzo one last call to speak to him and advise him to cease contact with Ms. Jennings but my call went unanswered. The charge will be filed via summons.

(*Id.*)

The instant Complaint, on the other hand, disputes the information listed in the Affidavit of Probable Cause. It alleges:

- "In direct contradiction to the affidavit of probable cause . . . during the morning hours of May 21, 2012, the Plaintiff was not at or near the Robert Morris School in the City of Scranton." (Compl. at ¶ 8.)

- "In direct contradiction to the affidavit of probable cause . . . Plaintiff has never had any interaction with Nancy Jennings at any time in his life up to and including the morning hours of May 21, 2012." (*Id.* at ¶ 9.)

- "In direct contradiction to the affidavit of probable cause, at no time did Patrick Dougher ever approach Ms. Jennings on May 21, 2012." (*Id.* at ¶ 10.)

- "In direct contradiction to the affidavit of probable cause . . . at no time did Patrick Dougher have any contact with Frank Trunzo on May 21, 2012." (*Id.* at ¶ 11.)

4

- "Frank Trunzo during the afternoon hours of May 21, 2012, at no time intentionally stared at or in the direction of Ms. Jennings as he did not know who this individual was on that date." (*Id.* at ¶ 13.)

- "In direct contradiction to the affidavit of probable cause . . . prior to the filing of criminal charges against Frank Trunzo on May 21, 2012, Defendant Mayer did in fact speak with Frank Trunzo." (*Id.* at ¶ 14.)

Plaintiff summarized these allegations as follows:

> Some of the language in [the Criminal Complaint and Affidavit of Probable Cause] appears to be intentionally misleading and factually inaccurate. Other parts of the paperwork are simply inadequate, regardless of Mayer's subjective intent, to establish probable cause to believe that there was probable cause that a crime had been committed.
>
> For example, Mayer's Affidavit of Probable Cause indicates that Patrick Dougher, the maintenance engineer at the school, was approached by Ms. Jennings purportedly for a witness concerning Mr. Trunzo.[1]   This encounter never occurred. The assertion that Dougher believed the Plaintiff may have been intoxicated is factually inaccurate, false and misleading. Ms. Jennings' statement that Frank Trunzo left after the interaction with him at the beginning of the school day is factually inaccurate for a number of reasons. Frank Trunzo was not at school in the morning of May 21, 2012. In the afternoon hours of May 21, 2012, Frank Trunzo had no interaction with Ms. Jennings. Defendant Mayer's assertion that he "gave Mr. Trunzo one last call to speak to him and advise him to cease contact with Ms. Jennings" which went unanswered is false as Mr. Trunzo and Sargent [*sic*] Mayer did in fact have a telephone conversation.

(*Id.* at ¶¶ 18-19.)

---

[1] This sentence misstates the Affidavit of Probable Cause. The Affidavit, as quoted above, states that it was Dougher who approached Jennings, and not the other way around.

Plaintiff then alleges that the Affidavit of Probable Cause contains several omissions, in addition to those listed above. Namely, Sergeant Mayer allegedly omitted in the Affidavit of Probable Cause "that there was no interaction between Frank Trunzo and Ms. Jennings at the school," (*id.* at ¶ 20) and "that the Facebook Friend Request was in no way material to any criminal conduct," (*id.* at ¶ 21). Moreover, "[t]he Affidavit of Probable Cause does not state the basis for the assertion that Ms. Jennings felt uncomfortable as there were no facts sworn to support it." (*Id.* at 22.)

Despite this alleged lack of probable cause, "Defendant Mayer charged Mr. Trunzo with harassment pursuant to 18 Pa. C. S. 2709(A)(4)."[2] (*Id.* at ¶ 24.) He then "stalled and waited to arrest Mr. Trunzo knowing that [Trunzo] would spend a night in the Lackawanna County Prison." (*Id.* at ¶ 25.) This single night appears to be the full extent of time that Trunzo spent in prison. (*See also* Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss, Doc. 11, at 4 (stating that "inasmuch as the factual allegations of Mr. Trunzo's arrest are contained within the Complaint," they indicate "that said arrest resulted in the Plaintiff spending a night in the Lackwanna County Prison").) The charges against Trunzo were finally dismissed on October 10, 2012, for unspecified reasons. (Compl. at ¶ 27.)

Trunzo then filed this Complaint against both Sergeant Mayer and the City of Scranton. Against Mayer, Plaintiff alleged claims of false arrest under 42 U.S.C. § 1983 (Count I), malicious prosecution under section 1983 (Count II), another claim involving

---

[2] The statutory provision provides: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: . . . communicates to or about such other person any lewd, lascivious or obscene words, language, drawing or caricatures[.]" 18 PA. CONS. STAT. ANN. § 2709(a)(4).

unlawful seizures (Count III), another malicious prosecution claim, apparently under

Pennsylvania tort law (Count IV), abuse of process (Count V), and intentional infliction of

emotional distress (Count VI).  He also filed a *Monell* claim (Count VII) against the City of

Scranton, for engaging in policies and customs that violated the Fourth and Fourteenth

Amendments to the United States Constitution and which resulted in Trunzo suffering

"substantial injuries and damages."  (*Id.* at ¶ 57.)

Defendants filed a Motion to Dismiss as to every count.  (*See* Doc. 8 at ¶¶ 2-9.)

## III.    **Standard of Review**

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement

to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of

action's elements will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-1965 (internal

citations and alterations omitted).  In other words, "[f]actual allegations must be enough to

raise a right to relief above the speculative level." *Id.* at 555, 127 S. Ct. at 1965.  A court

7

"take[s] as true all the factual allegations in the Complaint and the reasonable inferences

that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements."

*Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013)

(internal citations and quotation marks omitted). As cited above,

> *Twombly* and *Iqbal* require [a court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not show[n]—that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and

quotation marks omitted). This "plausibility" determination will be a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even if a "complaint is subject to a Rule 12(b)(6) dismissal, a district

court must permit a curative amendment unless such an amendment would be

inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment

would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV.   Analysis

Having summarized the standards governing a motion to dismiss, the Court now

turns to an evaluation of Plaintiff's Complaint.  In so doing, the Court finds numerous

deficiencies that warrant granting Defendants' Motion.

### a.  Procedural Deficiencies

#### i.  Count III is Insufficiently Stated

At the outset, the Court finds Count III indecipherably vague.  The Count is styled as

arising under "41.S.C. § 1983," (*see* Compl. at 9), which presumably means "42 U.S.C. §

1983." But the body of the claim is more confusing still.  After realleging all previous

allegations, Count III asserts, in its entirety:

40.   Despite the assertion in the affidavit of probable cause by defendant Mayer that harassment charges would be filed by summons, Mayer's request that a Magisterial District Judge issue an Arrest Warrant against Frank Trunzo on May 22, 2012 was far in excess of that authorized by law.  There was no reason for an Arrest Warrant authorizing the arrest and seizure of the Plaintiff by Defendant Mayer.

41.   The seizure, therefore, was in violation of the United States Constitution.  Defendant Mayer's conduct, therefore, was a deprivation under color of state law of rights guaranteed to Mr. Trunzo under the Fourth Amendment to the United States Constitution.

42.   As a result of Defendant's violations of Mr. Trunzo's Constitutional rights, Mr. Trunzo suffered substantial injuries and damages.

(*Id.* at ¶¶ 40-42.)

Defendants interpret this claim as alleging a constitutionally protected right to receipt of charges by summons, which would not be a cognizable claim under section 1983. (*See* Brief of Defs. in Supp. of their Mot. to Dismiss, Doc. 9, at 14-15.)  Plaintiff disagrees and says that the claim is actually about "the arrest and seizure of the Plaintiff by the Defendant Mayer [being] a violation of Plaintiff's Fourth Amendment rights." (Doc. 11 at 13.)  He then restates his allegations that Mayer wrongfully "represented to the Magisterial District Judge that the charges will be filed via summons" and that the Affidavit of Probable Cause wrongfully claimed that Mayer was unable to speak with Trunzo. (*Id.* at 13-14.)

Even if the Court were to accept Plaintiff's interpretation—which is not necessarily compelled by the face of the Complaint—a number of questions remain.  For instance:  How is this unconstitutional seizure claim different from that of Count I, which also claims that Trunzo was unconstitutionally seized under section 1983?

Or is Plaintiff in fact alleging that Mayer provided false information to the Magisterial Judge or otherwise fraudulently procured an arrest warrant?  If so, the Complaint does not say so.  If not, then it is hard to see what unlawful conduct Mayer engaged in under the Count as alleged.  In the absence of allegations of fraud, the Count only appears to allege that Mayer's actual actions differed from those predicted in the Affidavit of Probable Cause. But such allegations do not appear on their face to state a cause of action.  They especially do not appear to state a claim for false arrest, as Plaintiff's Brief in Opposition implies, given

10

that a misrepresentation as to how service would be effected appears to have no connection to a false arrest claim.

Rather than try to make sense of the allegations in Count III, the Court will dismiss the Count as insufficiently stated, but will allow Plaintiff leave to amend to provide a clearer statement. Because the remaining counts of the Complaint will also be dismissed with leave to amend for various reasons, also dismissing Count III would not additionally prejudice the Plaintiff. Moreover, the Court believes that it is better to allow the original author of the Complaint the opportunity to clarify his allegations rather than undertake the task of construing them itself, in order to avoid the possibility of misconstruing Plaintiff's claims.

### b. Substantive Deficiencies

#### i. Probable Cause (Counts I, II, IV, VI)

The consistent thread running through most of Plaintiff's remaining claims is that he was arrested without probable cause.

"The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process," as in Counts I and II,[3] "is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). Likewise, a malicious prosecution claim under Pennsylvania law, as

---

[3] And potentially also Count III, depending on how that Count is clarified.

11

alleged in Count IV, requires proof that the defendant "instituted proceedings against the

plaintiff (1) without probable cause, (2) with malice, and (3) the proceedings must have

terminated in favor of the plaintiff." *Kelley v. Gen. Teamsters, Chauffeurs, and Helpers,*

*Local Union 249,* 544 A.2d 940, 941 (Pa. 1988). Finally, the Pennsylvania Supreme

Court has described the tort of intentional infliction of emotional distress, as alleged in

Count VI, as follows:

> the conduct must be so outrageous in character, and so extreme in degree,
> as to go beyond all possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized society. Described another
> way, it has not been enough that the defendant has acted with intent which is
> tortious or even criminal, or that he has intended to inflict emotional distress,
> or even that his conduct has been characterized by "malice," or a degree of
> aggravation that would entitle the plaintiff to punitive damages for another tort.

*Hoy v. Angelone,* 720 A.2d 745, 754 (Pa. 1998) (internal citations and quotation marks

omitted). If Mayer had probable cause to arrest and initiate charges against Trunzo, his

actions would have been legal and certainly not "utterly intolerable in a civilized society."

Therefore, Counts I, II, IV, and VI (and, potentially, amended Count III) can only

proceed if Plaintiff has properly pleaded a lack of probable cause. "The substance of all

definitions of probable cause is a reasonable ground for belief of guilt." *Brinegar v. United*

*States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879 (1949) (internal citations

and quotation marks omitted). That is, "[p]robable cause exists where the facts and

circumstances within the arresting officer's knowledge are sufficient in themselves to

warrant a reasonable person to believe that an offense has been or is being committed by

the person to be arrested." *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990). "On many occasions [the Supreme Court has] reiterated that the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370, 124 S. Ct. 795, 799, 157 L. Ed. 2d 769 (2003) (collecting cases) (internal quotation marks omitted). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Id.* at 371, 124 S. Ct. at 800 (quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661-62, 134 L. Ed. 2d 911 (1996)). In reaching this conclusion, the arresting officer's state of mind—whether good or bad—is irrelevant; all the factfinder must ask is whether the facts available to the arresting officer objectively gave rise to a finding of probable cause at the time the arrest was made. *Whren v. United States*, 517 U.S. 806, 812-13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996) (summarizing cases and concluding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

Here, when accepted as true for purposes of the Motion to Dismiss, Plaintiff's allegations show, at most, that most of the facts on which the Affidavit of Probable Cause was based were inaccurate or irrelevant. The Complaint does not, however, show that these facts were not such as to warrant an objectively reasonable and prudent officer to

13

believe that a crime had been committed. Even if Trunzo had never interacted with Jennings before his arrest, even if he never appeared at the Robert Morris school on the morning of May 21, even if the encounters between Dougher and Jennings and between Dougher and Trunzo never occurred, even if the Facebook friend requests and messages mentioned in the Affidavit of Probable Cause could be characterized as not in violation of section 2709(a)(4), and even if the Affidavit was wrong to credit Jennings's statement that Trunzo's conduct made her uncomfortable, (*see* Compl. at ¶¶ 8-11, 19-22), none of this would indicate that there was a reasonable basis on which a reasonable police officer should have formed the belief that each one of those pieces of information was not in fact true at the time of filing charges and the arrest. To the contrary, a police officer may reasonably rely on apparently credible information that he receives in the course of a criminal investigation to establish probable cause for an arrest, even if a subsequent investigation might disclose that such information was, in fact, untrue. *See, e.g., Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000) ("[The police officer] had every reason to believe a credible report from a [person] who witnessed the alleged crime. This report alone sufficiently established probable cause. [The officer] was not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed."); *Karkut v. Target Corp.*, 453 F. Supp. 2d 874, 884 (E.D. Pa. 2006) ("[W]hen an officer has received his information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth, he has

14

probable cause to arrest the accused perpetrator.") (quoting *Lynch v. Hunter*, 2000 WL 1286396, at *3 (E.D. Pa. 2000)). While it is true that the Complaint alleges a conversation between Mayer and Trunzo prior to the filing of criminal charges, (*id.* at ¶ 14), and it is therefore conceivable that Trunzo could have told Mayer information that would negate probable cause, nowhere in the Complaint is the substance of this conversation alleged, which leaves the Court with no information to conclude that Mayer should not reasonably have relied on the facts available to him.

Instead, the Court is left with the Affidavit of Probable Cause which, as quoted above, states that Mayer received complaints that Trunzo was harassing Jennings following a confrontation about his intoxication at a school. It is not unreasonable to believe that a pattern of behavior that included stares in Jennings's direction, followed by messages stating that Jennings "f with the wrong person" and "will be surrounded"[4] indicated that Trunzo was engaged in the crime of harassment. This belief may have been further bolstered by the fact that Mayer observed a car matching the description that Jennings described her alleged harasser driving in Trunzo's driveway and that the car was verified as being registered in Trunzo's name.

---

[4] Plaintiff describes these statements as "vague" and "nonthreatening," respectively, and concludes that they "in no way support probable cause to support a charge of harassment." (Doc. 11 at 10.) The Court finds this characterization unpersuasive, given the standards for establishing probable cause discussed above. While legal technicians may be able to pick apart Trunzo's statements and uncover certain ambiguities, it is fairly clear that reasonable and prudent non-lawyers would interpret the statements—if accurately reported—as connoting threats of revenge by Trunzo against Jennings. Thus, under the practical, nontechnical, and context-specific standards by which the Court must evaluate the existence of probable cause, Plaintiff's attempts to give these statements an innocuous meaning are, at this stage, unconvincing.

15

Counts I, II, IV, and VI will therefore be dismissed with leave to amend. In an amended complaint, Plaintiff must plead with specificity facts that should have caused a reasonable police officer to disbelieve the facts provided in the Affidavit of Probable Cause, or that indicate that Mayer somehow disregarded exculpatory evidence or provided false evidence in the Affidavit of Probable Cause. In the absence of such well pleaded facts, Counts I, II, IV, and VI fail to state the claims alleged.

### ii. Abuse of Process (Count V)

"The tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (quoting Restatement (Second) of Torts, § 682).

> The gravamen of the misconduct for which the liability stated [under this tort] is imposed *is not* the wrongful procurement of legal process or *the wrongful initiation of criminal or civil proceedings*; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.

*Id.* (quoting Restatement (Second) of Torts, § 682, cmt. a) (emphasis added). To succeed on an abuse of process claim,

> the plaintiff must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . ; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

*Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)) (internal alterations omitted).

When read as a whole, Plaintiff's Complaint focuses on the allegation that Mayer wrongfully initiated criminal charges against him. It is in that context that the Court reads Plaintiff's abuse of process claim, which, after realleging all previous allegations, reads in its entirety:

> 50. Defendant Mayer used criminal legal process against Mr. Trunzo, resulting in Mr. Trunzo's arrest.
> 51. Defendant Mayer's purpose in using such legal process was primarily to accomplish a purpose for which it was not designated.
> 52. The use of such legal process proximately caused damage to Mr. Trunzo.

(Compl. at ¶¶ 50-52.)

This, however, only states a malicious prosecution claim. As the Supreme Court of Pennsylvania characterized the two torts:

> Decisions in this state and in other jurisdictions have drawn a distinction between actions for abuse of legal process and those for malicious prosecution . . . . The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated other than its proper effect and execution.

*Publix Drug Co. v. Breyer Ice Cream Co.*, 32 A.2d 412, 415 (Pa. 1943) (emphasis added). Plaintiff's Complaint appears to better fit the latter tort. It does not appear to involve process being perverted in some unlawful way, but simply alleges that valid criminal process was procured for malicious or unlawful purposes.

17

In an attempt to address this problem, Plaintiff states in his Brief in Opposition that the "perversion of process" complained of is Mayer's decision to arrest Trunzo instead of serving him by mailed summons, as stated in the Affidavit of Probable Cause. However, the problems with this argument are twofold. First, it is not apparent on the face of the Complaint that the phrase "Defendant Mayer used criminal legal process" refers to Mayer arresting Trunzo instead of serving him by summons. Second, arresting a criminal defendant is not using a legal process for a purpose for which it was not designed. Rather, arrest is a perfectly valid legal process; the issue is that Plaintiff contends that Mayer arrested him and initiated his criminal prosecution for unlawful reasons. But, under *Publix Drug*, these allegations only state claims for false arrest and/or malicious prosecution, which Plaintiff has already alleged multiple times.

For these reasons, the Court concludes that Plaintiff's Complaint does not state a claim for abuse of process. Moreover, even if the Court were to construe the Complaint in the way that Plaintiff requests in his Brief in Opposition, then Count V would still only state claims that have already been alleged, and would therefore warrant dismissal for superfluity.

Nonetheless, consistent with the Court's duty to freely permit curative amendments, the Court will dismiss Count V with leave to amend. In an amended complaint, Plaintiff should allege specific facts showing how process was perverted in such a way that could give rise to an abuse of process claim.

### iii. *Monell* Liability (Count VII)

Finally, Plaintiff brings a claim against the City of Scranton under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  This succinct claim alleges only:

> 56.  The policies and customs of the Defendant City of Scranton and its Police Department, as discussed above, were in violation of the Fourth and Fourteenth Amendments to the United States Constitution.
>
> 57.  As a result of such policies and customs, Mr. Trunzo suffered substantial injuries and damages.

(Compl. at ¶¶ 56-57.)

These policies and customs are themselves barely mentioned in the body of the Complaint.  Prior to Count VII, the only information alleged relevant to the *Monell* claim is a series of assertion that "the City of Scranton and its Police Department does not adequately train its officers" to file criminal charges only in the presence of probable cause, (*id.* at ¶¶ 28-29), and that the City and the Police Department "do not train police officers, without assuring that the police department uses its police power appropriately and constitutionally, and provides adequate training to its officers," (*id.* at ¶ 30).

This claim must also be dismissed for at least two reasons.

First, as discussed above, Plaintiff has not adequately pleaded a lack of his probable cause for his arrest or prosecution.  Therefore, even if it were true that the City and Police Department do not adequately train their officers in correct constitutional procedure, that

would be irrelevant to the instant Complaint, because Plaintiff has not shown that he was arrested or prosecuted without probable cause.

Second, the claim does not satisfy *Twombly* and *Iqbal*'s requirements that all factual allegations provide "more than labels and conclusions" or "a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. Rather, all that Plaintiff's *Monell* claim does is formulaically recite the elements of the cause of action. It conclusorily alleges that the grounds for *Monell* liability apply, without providing any factual allegations in support. Indeed, aside from Plaintiff's conclusory assertions, there are no allegations of any kind in the Complaint to raise Plaintiff's right to *Monell* relief above a speculative level.

Accordingly, Plaintiff's *Monell* claim will be dismissed for failure to state a claim. Again, this dismissal is without prejudice. In an amended complaint, Plaintiff should provide specific factual allegations that show how the City and Police Department failed to train their employees and how this failure harmed the Plaintiff.

### V.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 8) is **GRANTED** and Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**. A separate Order follows.

Robert D. Mariani
United States District Judge