# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK TRUNZO, | : |
| Plaintiff, | : |
| v. | : 3:13-CV-00467 |
| | : (JUDGE MARIANI) |
| SERGEANT MICHAEL MAYER and | : |
| THE CITY OF SCRANTON, | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On February 21, 2013, Plaintiff, Frank Trunzo, filed this suit against Defendants, Sergeant Michael Mayer and the City of Scranton. (Compl., Doc. 1). Defendants filed a Motion to Dismiss (Doc. 8), which the Court granted by Memorandum (Doc. 31) and Order (Doc. 32) on May 30, 2014. Plaintiff subsequently filed an Amended Complaint (Doc. 36) on June 20, 2014. Currently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 40). The parties have fully briefed the motion and it is now ripe for disposition. For the reasons set forth below, the Court will grant Defendants' motion. Also pending before the Court is Plaintiff's First Motion in Limine (Doc. 51). Because the Court will grant Defendant's Summary Judgment Motion (Doc. 40), obviating the need for trial, Plaintiff's Motion in Limine (Doc. 51) will be dismissed as moot.

## II. STATEMENT OF MATERIAL FACTS

In accordance with Local Rule 56.1, Defendants have submitted a Statement of Material Facts (Doc. 42) ("SMF") as to which they submit there is no genuine dispute for trial. Plaintiff subsequently submitted an Answer to Defendants' Statement of Material Facts (Doc. 49). After reviewing the record, the Court has determined that the resolution of this case turns upon the nature of two Facebook messages sent by Plaintiff to one Nancy Jennings. While much of what, if anything, transpired between Plaintiff and Jennings before Plaintiff sent those messages is in dispute, those questions of fact are not material to the resolution of Defendants' Motion for Summary Judgment and are largely omitted from this Court's discussion of the facts. Except where expressly noted, the following facts of record are undisputed.

On or about May 21, 2012, Defendant Sergeant Michael Mayer of the Scranton Police Department completed an Affidavit of Probable Cause in connection with a Criminal Complaint filed against Plaintiff before Magistrate Ware. (SMF, Doc. 42 at ¶¶1-2; Answer to SMF, Doc. 49 at ¶¶1-2). Plaintiff was charged with harassment under 18 Pa. Cons. Stat. § 2709(a)(4) based on Facebook messages sent by Plaintiff to Jennings. (*Id.* at ¶¶3-4). Defendant Mayer's Affidavit reads as follows:

> On May 21, 2012 at approximately 2026 hours I was dispatched to 1103 North Webster Avenue for a report of harassment. Upon arrival I spoke with Ms. Nancy Jennings. Ms. Jennings stated that she was dropping her child off at Robert Morris school at about noon, this date, and was approached by Mr. Pat Dougher, the school maintenance engineer. Mr. Dougher wanted Ms. Jennings to witness him approach Mr. Trunzo about his condition. Mr.

2

Dougher believed Mr. Trunzo may have been intoxicated. Ms. Jennings stated Mr. Trunzo left after that interaction, in a newer black Cadillac suv/station wagon with tinted windows. At about 1430 hours Ms. Jennings returned to the school to pick her child up and she could see that Mr. Trunzo was staring at her the entire time. Ms. Jennings stated she felt uncomfortable but Mr. Trunzo left without confrontation, in the same black Cadillac. Ms. Jennings stated that a short time later she received a request for friendship, from Mr. Trunzo, on the social network Facebook. Ms. Jennings became nervous but ignored the request. Some time after that, approximately 1600 hours, Ms. Jennings received a private message from Mr. Trunzo, over Facebook. The message contains accusations against Ms. Jennings and Mr. Trunzo indicated that Ms. Jennings, "f with the wrong person." In addition to that message here is yet another sent approximately one hour after the first. In the second, Mr. Trunzo continues with the derogatory remarks toward Ms. Jennings and states two different times that "you will be surrounded." Ms. Jennings is concerned for her safety because of Mr. Trunzo's action. I responded to 1648 Dickson Avenue, the listed address for Mr. Trunzo, to attempt to get his side of the story. In front of the house was a black Cadillac suv/station wagon with tinted windows. The registration GLC9978, came back to that address registered to Mr. Trunzo. I knocked on the door and after several minutes the light went on inside, a male made a quick peak out the window and nobody answered the door. I knocked constantly for several minutes, had Comm Center call in the house and nothing got anyone to come to the door. I returned to police headquarters and contacted ADA Maryclare Hayes. I explained the situation to her and we agreed that harassment (M3) was the appropriate charge. I gave Mr. Trunzo one last call to speak to him and advise him to cease contact with Ms. Jennings but my call went unanswered. The charge will be filed via summons.[1]

---

[1] Plaintiff denies SMF ¶5. (Doc. 49 at ¶5). Plaintiff characterizes the allegations in the paragraph drawn from the Affidavit of Probable Cause as being "based upon inadmissible hearsay" because they are "based upon information alleged provided by Nancy Jennings." However, Plaintiff does not expressly deny that the paragraph above is an accurate reproduction of the contents of the Affidavit of Probable Cause. *Id.* Indeed, such a denial would be unreasonable under the circumstances of this case. In response to a Court Order (Doc. 20), Plaintiff has filed of record a signed affidavit from Plaintiff's attorney in the related criminal case (Doc. 25). That affidavit attests to the authenticity of the Affidavit of Probable Cause attached to it, which contains this identical paragraph, with the exception of two minor, inconsequential errors the Court assumes occurred during Defendants' translation of the affidavit into electronic form. Additionally, as set forth more fully in its Order (Doc. 61) on Plaintiff's Motion to Strike (Doc. 46), the contested statements of Jennings play no role in this summary judgment opinion, which is based on the undisputed content of the Facebook messages Plaintiff sent to Jennings.

(Doc. 42 at ¶5). In a telephone conversation with Defendant Mayer, Plaintiff stated that he sent Jennings a Friend Request and a private message on Facebook. (Doc. 42 at ¶7; Doc. 49 at ¶7). Plaintiff expressly admits that he sent two Facebook messages and a friend request to Jennings on May 21, 2012. (*Id.* at ¶¶12-13). Plaintiff further admits to the content of these messages. (*Id.* at ¶¶14-15). The first message, sent at 2:57 pm that day reads as follows:

> hey lower then pond scummm bag, I just heard you were near my son at the school grounds and scared my 2 year old, I herd all about you, and it s all bad stuff, your a scumbag pot head from way back, I wish I was there when u scared my son, a 2 year old, well degenerate scum bag u f with the wrong person. ill make sure period ...... you are being under investigation.

(*Id.* at ¶14). The second message, sent at 4:29 pm, reads:

> Denaples truck were circling the school at the end of the day .. dirt bag. ugly whore. is your babys daddy out of prison yet? you are so ugly and grose .. anyone that knows the munley monster., is jst as dirty and ugly as her,,smoke your pot do your coke,, go take a bath ugly bitch ... stay the fuck away from me my kid and my girls kes and you had the nerve to say hi to Mariah today .. don't touch. her ..Denaples have your name...you were surrounded today..and you will be surrounded today..ungly fat piece of shit Just like whore beg Munley that Mariah whishes didn't exist ..

(*Id.* at ¶15).

An arrest warrant issued from the office of Magistrate Paul Ware on May 22, 2012. (*Id.* at ¶16). Plaintiff was charged with harassment pursuant to 18 Pa. Cons. Stat. § 2709(a)(4) "Harassment – Comm. Lewd, Threatening, Etc. language."[2] (*Id.*). In the evening

---

[2] Plaintiff responds that SMF ¶16 is "[a]dmitted in part and denied in part." (Doc. 49 at ¶16). According to Plaintiff's Answer, "[i]t is admitted that a Warrant issued from the office of Magistrate Ware. To the extent the [SMF ¶16] asserts that the charges had merit, same is therefore denied." *Id.* The Court

4

of the same day, Defendant Mayer and another police officer, James Priorelli, arrested Plaintiff at his home. (*Id.* at ¶17). Plaintiff was transported to the Lackawanna County Sheriff's Office and then to the Lackawanna County Jail, from which he was released the next morning. (*Id.* at ¶¶18-20).

### III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the

---

does not consider this a genuine denial of Defendants' asserted statement of fact – that an arrest warrant for Plaintiff issued from the office of a particular magistrate and that the charge was harassment under a particular section of the Pennsylvania Consolidated Statutes. SMF ¶16 is deemed admitted.

5

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. ANALYSIS

### A. Count I: False Arrest under § 1983

"The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). "The substance of all definitions of probable cause is a reasonable ground for belief of guilt." *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (internal citations and quotation marks omitted). That is, "[p]robable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been

6

or is being committed by the person to be arrested." *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990). "On many occasions [the Supreme Court has] reiterated that the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (collecting cases) (internal quotation marks omitted). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Id.* at 371 (quoting *Ornelas v. U.S.*, 517 U.S. 690, 696 (1996)). In reaching this conclusion, the arresting officer's state of mind—whether good or bad—is irrelevant; all the factfinder must ask is whether the facts available to the arresting officer objectively gave rise to a finding of probable cause at the time the arrest was made. *Whren v. United States*, 517 U.S. 806, 812-13 (1996) (summarizing cases and concluding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

Here, there can be no doubt that the facts available to a reasonable police officer at the time Defendant Mayer wrote his Affidavit and effectuated Plaintiff's arrest amount to probable cause. It is undisputed that the charge on which Plaintiff was arrested was 18 Pa. Cons. Stat. § 2709(a)(4). That section of the Pennsylvania Consolidated Statutes reads as follows:

7

> (a) Offense defined.--A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>
>> (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures;

It is further undisputed that the basis for this charge was that "Trunzo, sent Nancy Jennings . . . messages over the social network Facebook over the course of several hours." (Doc. 42 at ¶4; Doc. 49 at ¶4).[3] The content of the Facebook messages is also undisputed. The Court will set them forth again both for ease of reference and because of their centrality to the summary judgment inquiry. The first message, sent at 2:57 pm on May 21, 2012, reads as follows:

> hey lower then pond scummm bag, I just heard you were near my son at the school grounds and scared my 2 year old, I herd all about you, and it s all bad stuff, your a scumbag pot head from way back, I wish I was there when u scared my son, a 2 year old, well degenerate scum bag u f with the wrong person. ill make sure period ...... you are being under investigation.

The second message, sent at 4:29 pm on the same day, reads:

> Denaples truck were circling the school at the end of the day .. dirt bag. ugly whore. is your babys daddy out of prison yet? you are so ugly and grose .. anyone that knows the munley monster., is jst as dirty and ugly as her,,smoke your pot do your coke,, go take a bath ugly bitch ... stay the fuck away from me my kid and my girls kes and you had the nerve to say hi to Mariah today .. don't touch. her ..Denaples have your name...you were surrounded today..and you will be surrounded today..ungly fat piece of shit Just like whore beg Munley that Mariah whishes didn't exist ..

---

[3] SMF ¶4 reads as follows: "The basis for this charge was that 'Trunzo, sent Nancy Jennings unwanted, threatening messages over the social network Facebook over the course of several hours.'" Plaintiff admits the entirety of SMF ¶4 "with the exception of the assertion that the messages were 'unwanted' . . . and . . . 'threatening' . . . ." (Doc. 49 at ¶4). Thus, the Court has omitted the words "unwanted" and "threatening" here.

In an earlier Memorandum in this case, the Court remarked of the Facebook messages:

> Plaintiff describes these statements as "vague" and "nonthreatening," respectively, and concludes that they "in no way support probable cause to support a charge of harassment." (Doc. 11 at 10.) The Court finds this characterization unpersuasive, given the standards for establishing probable cause discussed above. While legal technicians may be able to pick apart Trunzo's statements and uncover certain ambiguities, it is fairly clear that reasonable and prudent non-lawyers would interpret the statements—if accurately reported—as connoting threats of revenge by Trunzo against Jennings. Thus, under the practical, nontechnical, and context-specific standards by which the Court must evaluate the existence of probable cause, Plaintiff's attempts to give these statements an innocuous meaning are, at this stage, unconvincing.

The Court's view of these messages remains unchanged by any evidence or argument Plaintiff has put forth at the summary judgment stage.

In his Opposition Brief (Doc. 48), Plaintiff asserts that "the Court's focus should be on the peculiar messages of Plaintiff communicated via Facebook," (*id.* at 5), a statement with which the Court wholly agrees. As Plaintiff states, "[t]he inquiry is simple: was there probable cause to file harassment charges and incarcerate the Plaintiff Trunzo?" (*Id.*) The Court breaks with Plaintiff's analysis, however, in his characterization of the messages. As a matter of law, this Court finds that Defendant Mayer had a reasonable basis to find that the messages constituted probable cause to charge Plaintiff under 19 Pa. Cons. Stat. § 2709(a)(4) based on a fair and complete reading of the messages themselves.

For instance, Plaintiff wrote to Jennings "I wish I was there when u scared my son," the implication being that, had he been there, he would have done something to Jennings. Plaintiff goes on to tell Jennings that she is "under investigation" and that she was and will

9

be "surrounded." Throughout, Plaintiff calls Jennings and an apparent acquaintance of hers a string of slurs, conveying anger and disdain. The language within the messages is easily susceptible to an interpretation that is one of a threatening[4] nature, communicated to Jennings with an intent to harass, annoy, or alarm her. No reasonable jury could find that Defendant Mayer did not have probable cause based on the facts of this case.

In his Opposition Brief, Plaintiff fails to make any convincing argument to the contrary. According to Plaintiff, "[i]t would be an insult to the word threatening if the statements of [Plaintiff] are determined to fall into that category. [Plaintiff]'s nonsensical statements were not threatening or criminal." (*Id.* at 7). But Plaintiff's averment that Defendant Mayer could not reasonably conclude that messages constituted probable cause does not make it so. As set forth above, Defendant Mayer had a reasonable basis to find that the messages constituted probable cause to charge Plaintiff under the harassment statute at issue in this case. The Court will grant summary judgment to Defendant Mayer on Count I.

---

[4] Webster's Dictionary definitions of lewd, lascivious, and obscene all have sexual denotations, such that Plaintiff apparently sees it as advantageous to argue that the Facebook messages "convey[] nothing sexual." (Doc. 48 at 6). Though the Court is somewhat reluctant to engage with Plaintiff's overdone parsing of what is, in the Court's view, a straightforward statute, *see Brenneman v. St. Paul Fire & Marine Ins. Co.*, 192 A.2d 745, 747 (Pa. 1963) ("What is an accident? Everyone knows what an accident is until the word comes up in court. Then it becomes a mysterious phenomenon . . . ."), the Court notes that it is undisputed that Plaintiff calls Jennings an "ugly whore" in his second message. Webster's Dictionary defines "whore" as "a woman who engages in sexual acts for money : PROSTITUTE." *See* http://www.merriam-webster.com/dictionary/whore. Thus, the Court does not so easily credit Plaintiff's argument that the messages are not lewd, lascivious, or obscene. But it is, ultimately, of no moment, as the Court's analysis turns instead on whether or not the messages can be read as "threatening."

## B. Count II: Malicious Prosecution under § 1983

Count II of Plaintiff's Amended Complaint alleges malicious prosecution under § 1983. To prevail on this claim, Plaintiff "must establish that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor;[5] (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014). "When the plaintiff 'bases her malicious prosecution claim on alleged Fourth Amendment violations arising from her arrest and prosecution' for the same offense, the establishment of probable cause under the false arrest claim 'also disposes of [the plaintiff's] remaining § 1983 claim [for] malicious prosecution.'" *Romich v. Sears Holding Corp.*, No. CIV.A. 12-5383, 2013 WL 5925082, at *5 (E.D. Pa. Nov. 5, 2013) (quoting *Wright v. City of Phila.*, 409 F.3d 595, 604 (3d Cir. 2005)). Because this Court has determined that, as a matter of law, Defendant Mayer acted with probable cause, the Court will grant summary judgment to Defendant Mayer on this count.

---

[5] Were it necessary to reach the issue of whether the proceedings that were initiated against Plaintiff ended favorably to him, it is the Court's view that it is unclear whether they did. (*See* Trunzo Deposition, Doc. 43, Ex. 2 at 20-21). However, as more fully addressed in the body of this opinion, the decision here turns on a conclusion that Defendant Mayer did have probable cause to initiate criminal charges on the strength of Plaintiff's Facebook messages to Jennings.

11

## C. Count III: Malicious Prosecution under State Law[6]

A malicious prosecution claim under Pennsylvania law, as alleged in Count III, requires proof that the defendant "instituted proceedings against the plaintiff (1) without probable cause, (2) with malice, and (3) the proceedings must have terminated in favor of the plaintiff." *Kelley v. Gen. Teamsters, Chauffeurs, and Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). Because this Court has determined that, as a matter of law, Defendant Mayer acted with probable cause, the Court will grant summary judgment to Defendant Mayer on this count.

## D. Count IV: Abuse of Process under State Law

"The tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (quoting Restatement (Second) of Torts, § 682).

> The gravamen of the misconduct for which the liability stated [under this tort] is imposed *is not* the wrongful procurement of legal process or *the wrongful initiation of criminal or civil proceedings*; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.

---

[6] The Court notes that it is unclear whether Plaintiff indeed opposes Defendants' Motion for Summary judgment with respect to his state law claims. In his Opposition Brief, Plaintiff writes that "summary judgment is inappropriate for the Defendants on Plaintiff's false arrest and malicious prosecution claims pursuant to 42 U.S.C. § 1983. The City's argument as to the *Monell* claim of the Plaintiff should be dismissed for the reasons set forth below." (Doc. 48 at 2).

12

*Id.* (quoting Restatement (Second) of Torts, § 682, cmt. a) (emphasis added). To succeed on an abuse of process claim,

> the plaintiff must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . ; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

*Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)) (internal alterations omitted). There is simply no record evidence that Defendant Mayer committed the tort of abuse of process. Defendant Mayer has done nothing more than carry out a legally valid arrest and is entitled to summary judgment on this count.

### E. Count V: Intentional Infliction of Emotional Distress under State Law

The Pennsylvania Supreme Court has described the tort of intentional infliction of emotional distress, as alleged in Count V, as follows:

> the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Described another way, it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

*Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (internal citations and quotation marks omitted). Because Defendant Mayer had probable cause to arrest and initiate charges against Plaintiff, his actions were legal and certainly not "utterly intolerable in a civilized

society." According, the Court will grant summary judgment to Defendant Mayer on Plaintiff's intentional infliction of emotional distress claim.

### F. Count VI: *Monell* Claim against the City of Scranton

Plaintiff also brings a claim against the City of Scranton under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). This succinct claim alleges only:

> 93. The policies and customs of the Defendant City of Scranton and its Police Department, as discussed above, were in violation of the Fourth and Fourteenth Amendments to the United States Constitution.
>
> 94. As a result of such policies and customs, Mr. Trunzo suffered substantial injuries and damages.

(Doc. 36 at ¶¶ 93-94). These policies and customs are themselves barely mentioned in the body of the Amended Complaint. Prior to Count VI, the only information alleged relevant to the *Monell* claim is a series of three assertions made "[u]pon information and belief," that "the City of Scranton and its Police Department does not adequately train its officers" to file criminal charges only in the presence of probable cause, (*id.* at ¶¶ 60-61), and that the City and the Police Department "do not train police officers, without assuring that the police department uses its police power appropriately and constitutionally, and provides adequate training to its officers," (*id.* at ¶ 62). Indeed, it appears to this Court that that Plaintiff has repleaded in the Amended Complaint the same count with the same supporting "facts," and no more, that the Court previously dismissed with respect to the original Complaint. (*See* Doc. 31, at 19-20).

Had Defendants moved to dismiss Count VI, the Court would have done so. Just as the *Monell* claim in the original Complaint did not satisfy *Twombly* and *Iqbal*'s requirements that all factual allegations provide "more than labels and conclusions" or "a formulaic recitation of a cause of action's elements," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), (*see* Doc. 31 at 19-20), it does not do so here. Rather, all that Plaintiff's *Monell* claim does is formulaically recite the elements of the cause of action. It conclusorily alleges that the grounds for *Monell* liability apply, without providing any factual allegations in support. Indeed, aside from Plaintiff's conclusory assertions, there are no allegations of any kind in the Amended Complaint to raise Plaintiff's right to *Monell* relief above a speculative level.

The City of Scranton has, however, moved for summary judgment on the *Monell* claim. Plaintiff's deficiencies under the standard for dismissal for failure to state a claim are only magnified under the summary judgment standard. Plaintiff has failed to adduce any evidence of record pointing to a policy, custom, or procedure of the Scranton Police Department at all. To the extent that Plaintiff alleges liability under a failure to train theory in particular, Plaintiff has fallen woefully short of creating a triable dispute of fact relevant to that theory. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," *Connick v. Thompson*, --- U.S. ---, 131 S.Ct. 1350, 1359-60 (2011), and thus "rigorous standards of culpability and causation must be applied to ensure that the

municipality is not held liable solely for the actions of its employee." *Bd. of Cnty Com'rs of Bryan Cnty v. Brown*, 520 U.S. 397, 405 (1997). Plaintiff has failed to adduce record evidence of either a constitutional violation in this case or any "identified deficiency" in the City of Scranton's training program, let alone a causal link between the two. *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)) ("Additionally, 'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation."). Given this lack of crucial evidence in the record, any further analysis of a failure-to-train *Monell* claim is patently unnecessary.

Plaintiff's only argument in defense of his *Monell* claim is that the City of Scranton has waived its argument that it is entitled to summary judgment on the *Monell* claim because it raises that argument only "in passing." (Doc. 48 at 13). To be clear, Defendants' "passing" argument is that there is no evidence of record that establishes that the City of Scranton has an inadequate training program. (Doc. 41 at 24-25). No more need be said given Plaintiff's failure even state a *Monell* claim, let alone create a triable dispute of fact as to the City of Scranton's liability; Plaintiff's waiver defense to Scranton's summary judgment motion with respect to a *Monell* claim is baseless and a distortion of the summary judgment standard. The City of Scranton is entitled to summary judgment on Count VI.

## V. CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment will be granted in its entirety.

A separate Order follows.

Robert D. Mariani
United States District Judge